Supreme Court, Livingston County, April, 1899. Unreported.

In the Matter of the Application of JOSIAH V. LOCKLIN for a Restraining Order against MICHAEL J. LEE.

To the Supreme Court:

I, William A. Sutherland, the referee appointed in this proceeding by order of this court made January 31st, 1899, to take and report the evidence, together with my opinion, do hereby certify and report that from the evidence taken before me I am of opinion that the following facts are established:

The defendant occupies a building in the village of Caledonia and holds a liquor tax certificate such as is granted to hotel keepers. On the 26th day of November, 1898, the defendant's premises were visited by two inspectors of the excise department named Bradley and Parsons, on which date the defendant had three sleeping rooms on the first floor and three on the second floor of his hotel. The first of the rooms down stairs was a dark room, that is to say, a building had been erected commencing in November, 1897, and finished in February, 1898, (page 50), so close to the Lee hotel that it absolutely darkened and prevented the ingress of light through the only window which had formerly lighted this room. The second of these rooms on the first floor was in the extreme rear of the building and could be entered from the interior of the building only by passing through the room first above described, there being no independent doorway or means of access into the hallway. In the rear of the room there was a sash door opening into the back yard, through which door this room receives its light. The third bedroom below complied with the requirements of the statute. One of the three rooms on the second floor had no doorway opening into the hall, the only means of access thereto from the hall being through one of the other two bed rooms on that floor.

The hotel premises of the defendant were in the condition above described from November 26, 1898, up to and including February 17, 1899, the date of the first hearing in this proceeding.

Between February 17, 1899, and March 11, 1899, the date of the second hearing, an attempt was made to erect an additional bed room on the first floor immediately in the rear of the barroom and in front of the bedroom first above described. On this latter date a map of the defendant's premises was received in evidence on which the room now referred to is marked number one. The room described first in the testimony of February 17th, is marked number two, and the other two rooms below marked respectively three and four, the three rooms on the floor above being marked respectively five, six and seven. The room number one of March 11th, 1899, is a part of the area of the hallway back of the barroom. It is marked " dark " upon the map because the light from the window in the hallway is considerably obscured by a large cooler which extends five feet four inches across the face of this room, leaving an open space two feet eight inches wide, through which passage is had from the main hallway into this room, the

passage being open and without any door or other means of closing it up. This room was separated from the barroom by a partial partition reaching eight feet towards, but not connecting with, the ceiling.

Between the date of the hearing on March 11th and March 27th, the date of the third hearing, (page 68), still further changes were made on both floors of the hotel. On the first floor the hallway had been shifted to the other side of the building, and the two rooms marked one and two on the map of March 11th, are now occupied in part by the hallway, whereas what was the hallway now constitutes a part of two bedrooms. Each of these newly constructed bedrooms contains an independent doorway opening into the hall, each of them is lighted by a proper window, and the bedroom in the rear of this, which formerly had no doorway, is now supplied with such a door.

On and after March 27th, 1899, the defendant Lee, had four rooms on the first floor of the hotel properly equipped as bedrooms, each complying with the structural requirements of the statute. On the second floor, the three bed rooms remain the same as before, except that the bed room next to the dining room, number five on the map of March 27th, now has a doorway opening into the hall, the same room, number seven on the map of March 11th, not having been previously provided with any door into the hall. Each of these rooms now complies structurally with the requirements of the statute.

The defendant Lee was advised by three excise agents visiting his place officially on different dates that his hotel very nearly complied with the statutory requirements. He was advised by the agent Robertson (page 60) that his hotel substantially conformed to the requirements of the statute. This witness, who is a lawyer by profession, and had been district attorney of his county, testified March 11th, 1899, (page 61), that in his opinion the rooms in the defendant's hotel as then constructed were in conformity to the statute.

The defendant Lee, his wife and one child have lived at the said hotel during the period covered by his said license and are accustomed to occupy one of the said bed rooms for sleeping accommodations (testimony of Thompson, page 31; testimony of Howke, page 50; testimony of John Lee, page 58).

From about the 10th day of September, 1898, until about the last day of October, 1898, the defendant suffered and permitted a

gambling device known as the nickel-in-the-slot machine to be set up in one of the main rooms, or office, of his said hotel, during which time the said nickel-in-the-slot machine was used and operated by those who chose to do so to a greater or less extent. When the said machine was set up the defendant was informed by an agent of the manufacturer thereof that it had been decided by a court of competent jurisdiction that the said machine, or device, was not a gambling apparatus, and a clipping from a Rochester newspaper was exhibited to the defendant in support of this claim. Subsequently, and at about the time the said machine was taken away from the said hotel the defendant was informed and advised that the said machine was a gambling device and had not been declared or decided otherwise by any court of competent jurisdiction, and the defendant thereupon, or very soon thereafter, caused the said machine to be removed from his said hotel and returned to the vendor, or former owner, and the same has not been in use in his said hotel since the date last above mentioned.

On the 30th day of September, 1898, the defendant attended bar at his said hotel and on that day sold beer (pages 69 and 70) to Roy McWilliam, who was sixteen years of age on the first day of May, 1898. The beer was paid for by McWilliam. Edward Johnson, who was seventeen years of age in July, 1898, was present with McWilliam on the 30th day of September, 1898, and the defendant Lee delivered beer to Johnson, the same time that he supplied McWilliam, and McWilliam paid for the beer furnished to both. The boy Johnson became intoxicated on this occasion (page 77) having had several drinks at the defendant's place.

The foregoing are all of the facts which I deem established by the testimony offered before me and, in addition to the allegations of the moving papers which are admitted in the answering affidavits, constitute all the facts proved in this matter.

The jurisdiction and authority of the referee being limited to the powers conferred upon him by the order of his appointment and by the terms of the statute under which the appointment is authorized has no power to pass on questions of evidence and can only note the objections and exceptions of the parties, must take the evidence offered by either party, the competency of the testimony to be determined by the court on the coming in of the report. (*Fox* v. *Moyer,* 54 N. Y. 125; *Ward* v. *Ward,* 29 Abbott's New Cases, 256; *Matter·of Crooks,* 23 Hun, 696; *Sullivan* v. *Sullivan,*

52 Howard, 453; *Dormus* v. *Doremus,* 76 Hun, 337, 59 State Rep. 324.)

I have therefore taken all the evidence offered by either party on this proceeding, noting the objections in each instance together with a ruling and an exception, and in some instances, upon the request of counsel, noting also my own opinion as to the ultimate admissibility of the testimony.

For reasons more fully expressed in the Woollett case I am of opinion that the petitioners are not entitled to the injunction sought in this proceeding. All the acts complained of at the time of the commencement of these proceedings have ceased.

Judge Grey said in *Reynolds* v. *Everett,* 144 N. Y. 189, 194: " The refusal to grant the relief prayed for (an injunction) could rest upon the general view taken of the merits of the case, or it could rest upon the cessation of the acts complained of." Reynolds sought an injunction against certain cigarmakers in Binghamton on account of a strike in which they were engaged at the time of the commencement of his action. Judge Grey says, (page 194) : " The finding of the trial justice was, and it appeared upon the trial as an incontroverted fact, that the so-called strike began on a certain day and was then over and there no longer existed that condition of things in which the complainants had sought the aid of a court of equity."

So it is here. All complaint as to the structural character of the defendant's premises ceased, according to the proofs, on or before March 27th, 1899. The nickel-in-the-slot machine was removed from his premises before the commencement of these proceedings and there is no proof that he has sold beer to any persons under the age of eighteen years except on the 30th day of September, 1898. I am of opinion that the defendant did not have six statutory guest rooms in his hotel prior to March 11th, 1899, nor prior to some time between March 11th, 1899, and March 27th, 1899. The proofs as to his hotel made on the 11th day of March, 1899, showed seven bed-rooms of which four were on the first floor, room number one being absolutely dark, having no means for receiving the daylight except through a hallway, two feet eight inches wide opening into a larger hallway. There was no window anywhere in this room number one. Room number two originally had a window but that window was walled up by the erection of an adjacent building previous to the granting of the license under consideration. True, there was a transom

over the doorway by which this bedroom was entered from the dark room number one, but this transom did not admit light and room number two was properly designated as a dark room upon the map filed March 11th. Room number three while properly lighted did not have " independent access by a door opening into a hallway." It had two doors, one opening into the bed-room number two and one opening into the back yard.

It is argued that this rear door was in substantial compliance with the statute and that room number three being so situated that a person could get out of it without passing through any other bed-room must be deemed to have complied with the statute.

I cannot so interpret the statute. The defendant seeks the aid of a statute to enter a privileged class. Desiring to engage in an occupation from which all are excluded save those who will comply with the statute he must be held to a reasonably exact compliance with the conditions which the statute imposes. While the Legislature might have said that doorways from bed-rooms opening into the back yard would be acceptable and rooms thus furnished might be counted as guest rooms, yet the Legislature thought it wise to specifically direct that there must be an independent doorway from each guest room opening into the hallway of the hotel; and he who seeks the privileges conferred by this statute cannot be permitted to disregard a positive, unmistakable, unequivocal command of the statute and justify himself by the plea that he has done something else which he thinks is equally as good.

On the second floor by the testimony of March 11th, room number seven concededly had no doorway opening into any hallway but had two doors, one opening into bedroom number six and the other opening into the dining-room. It is clear to my mind that on and prior to March 11th, 1899, there was but one bedroom on the first floor and there were but two bedrooms on the second floor which complied with the requirements of the statute.

I have been thus precise and definite in pointing out the radical defects in the bedrooms both in this case and in the Woollett case because the defendants in both cases were advised by those whose advice they had a right to regard as well nigh authoritative, that the plain and simple directions of the statute might be disregarded, that their bedrooms as equipped before the hearing on March 27th were in substantial conformity to the statute and were satisfactory to the excise department of the State.

While therefore this defendant may be excusable in large measure for failing to comply literally with the statute I am of opinion that the advice given him by the agents of the excise department was erroneous to say the very least, and ought not to be countenanced nor apparently sanctioned when brought under review by the court. While therefore I am of opinion that the present condition of the defendant's premises must lead to a denial of an injunction, and this proceeding having been instituted only for an injunction must necessarily be dismissed, yet In order that such dismissal may not be regarded as in any wise sanctioning the acts which were complained of by the petitioners, I have felt constrained to point out the various particulars in which, in my judgment, the defendant failed to comply with the statute up to and including March 11th, 1899.

The application for the writ of injunction should, however, be denied.

M. A. SUTHERLAND,
*Referee.*

Dated at Rochester, N. Y., this 21st day of April, 1899.